UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------x

JOSEPH A. PISANI,

05 Civ. 8189 (WCC)

Plaintiff,

-against-

STATEN ISLAND UNIVERSITY HOSPITAL, ANTHONY C. FERRERI, and PATRICK F. McDERMOTT,

Defendants.
-----------------------------------------------------x

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S PRE-ANSWER MOTION TO DISMISS**

## Table of Contents


**Page**

Table of Authorities ....................................................................................ii

Background.................................................................................................1

Controlling Principles of Law an Overview of Plaintiffs' Claims.............................8

POINT I
DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S
DEFAMATION CLAIM MUST BE DENIED..........................................9

A. The hospital's statement is "of and concerning plaintiff;" at the
very least, a jury could so conclude..................................................9

B. The SIUH statement is susceptible to a defamatory
interpretation...................................................................................14

C. The hospital's statement is neither a privileged expression of
opinion nor a privileged report of a judicial proceeding...........................16

POINT II

THE ALLEGATIONS OF THE COMPLAINT WITH RESPECT TO
THE INDIVIDUAL DEFENDANTS ARE SUFFICIENT TO
WITHSTAND THIS PRE-ANSWER MOTION TO DISMISS ..................22

Conclusion..................................................................................................25

**TABLE AUTHORITIES**

**Cases** **Page**

Aronson v. Wiersma, 65 N.Y.2d 592 (1985)....14, 15

Brady v. Ottoway Newspapers, Inc., 84 A.D.2d 226 (2nd Dept. 1982)....12, 13

Branca v. Mayesh, 101 A.D.2d 872 (2nd Dept. 1984, aff'd, 63 N.Y.2d 994 (1984)....21

Brian v. Richardson, 87 N.Y.2d 46 (1995)....18

Chicherchia v. Cleary, 207 A.D.2d 855 (2nd Dept. 1994)....10

Clark v. Schuylerville Central School District, 2005 WL 3543791 (3rd Dept. December 29, 2005)....17

Cooper v. Parsky, 140 F.3d 433 (2nd Cir. 1998)....9

Dalbec v. Gentleman's Companion, Inc., 828 F.2d 921 (2nd Cir. 1987)....11

Divet v. Reinisch, 169 A.D. 2d 416....21

Excellus Health Plan, Inc., v. Daniel T. Tran, 287 F.Supp 167 (W.D.N.Y. 2003)....11, 12, 13, 14

Freedman v. Freedman, 116 F.Supp.2d 379 (E.D.N.Y. 2000)....8

Goldreyer v. Van Der Wetering, 217 A.D.2d 434 (1st Dept. 1995)....21

Golub v. Enquirer/Star Group, Inc., 89 N.Y.2d 1074 (1997)....15

Gross v. The New York Times Company, 82 N.Y.2d 146 (1993)....17, 18

Hughes Training, Inc. Link Division v. Pegasus Real-Time Inc., 255 A.D.2d 729 (3rd Dept. 1998)....21

In re Hougigant, Inc. v. Hougigant, Inc., 1996 WL 527334 (S.D.N.Y. 1996)....10

Kjar v. Jordan, 217 A.D.2d 981 (4th Dept. 1995)....24

Kraus v,. Brandstetter, 202 A.D.2d 396 (2nd Dept. 1994)....24

Levin v. McPhee, 917 F.Supp. 230 (S.D.N.Y. 1998)....9

Matherson v. Marchello, 100 A.D.2d 233 (2nd Dept. 1984)....15

Mencher v. Cheslsey, 297 N.Y. 94 (1947)........................................................15

Ocean State Seafood v. Capital Newspaper, 112 A.D.2d 662 (3rd Dept. 1985)............21

Patel v. Contemporary Classics of Beverly Hills, 259 F.3d 123 (2nd Cir. 2001)............8

Roth v. UFT, 5 Misc.3d 888 (Kings Co. 2004) ..........................................................17

Schlesinger v. New York City Transit Authority, 2001 WL 62868 *1 (S.D.N.Y. 2001)...8

Sheppard v. Beerman, 18 F.3d 147 (2nd Cir. 1994)..............................................8

Steinhilber v. Alphonse, 68 N.Y.2d 283 (1986)................................................18

Treppel v. Biovail, 2005 WL 2086339 (S.D.N.Y. August 20, 2005)..................22, 23

Ward v. Klein, 2005 WL 2997758 (N.Y. Co. November 9, 2005)..........................14

Wenz v. Becker, 948 F.Supp 319 (S.D.N.Y. 1996)..........................................20

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------x

JOSEPH A. PISANI,

05 Civ. 8189 (WCC)

Plaintiff,

-against-

STATEN ISLAND UNIVERSITY HOSPITAL, ANTHONY C. FERRERI, and PATRICK F. McDERMOTT,

Defendants.
-------------------------------x

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S PRE-ANSWER MOTION TO DISMISS**

This Memorandum of Law is submitted on behalf of Plaintiff Joseph A. Pisani in opposition to Defendants' Pre-Answer Motion to Dismiss his claim of defamation.

Defendants also seek a change of venue to the Eastern District. Plaintiff consents to Defendants' application for a change of venue.

**Background**

As alleged in the Complaint, Plaintiff Joseph A. Pisani is a certified public accountant, a citizen of the United States and a domiciliary/citizen of the State of New Jersey. (Complaint para 3) For a period of time and ending in August 2000 Pisani was Executive Vice President of the Defendant Staten Island University Hospital ("SIUH" or "the

Hospital"). Affidavit of Jane Bilus Gould in Opposition to Motion to Dismiss, Exhibit 1.

Defendant Anthony C. Ferreri, who is sued in his individual and official capacities, at all times relevant to this complaint was the President and CEO of SIUH. Defendant Patrick F. McDermott, who is sued in his individual and official capacities, at all times relevant to this complaint was the Chairman of the Board of Directors of SIUH. Complaint, paras 5 and 6.

Subsequent to Plaintiff's employment at SIUH, and until May 18, 2005, pursuant to a personal services agreement dated January 15, 2004, Plaintiff was employed by Westchester County Health Care Corporation as Executive Vice President at an annual salary of $480,000. Id.

On May 18, 2005, New York State Attorney General Elliot Spitzer jointly issued with Defendants a press release, published simultaneously throughout the world on the Attorney General's Internet website, regarding the settlement between the State of New York and SIUH of a Medicaid fraud complaint (the "AG's Complaint"). In that connection Defendants knew that the impact of that publication would not only occur throughout the State of New York and the United States, but worldwide as well. Complaint, para 7; Defendants' Moving papers, Exhibit B.

Each of the Defendants authorized, participated in and/or approved both the settlement and the circumstance that the press release and related documents (including the below-referenced complaint and SIUH statement regarding same) were going to be published to the world on the Internet. Complaint, para 8.

In connection with that settlement it was jointly reported on the AG's website that SIUH agreed to reimburse the State for "fraudulently billed services" in excess of $76,500,000. Complaint, para. 9, Defendants' Moving Papers, Exhibit B.

As part of the foregoing press release a "statement by the Hospital"[1] was published on the Attorney General's website. That statement provided in pertinent respect:

> "It causes SIUH's Trustees and current Executives much pain to come before our community in these circumstances. We deeply regret and are embarrassed by the misconduct carried out by former executives of the Hospital that led to this settlement. . . . We humbly pledge to work conscientiously to keep SIUH from ever again bringing such dishonor to the hospital".

Complaint, para 10, Defendants' Moving Papers, Exhibit B.

In conjunction with the issuance of the press release and the Hospital's statement, the Attorney General published on his website a copy of the civil complaint

---

[1] The Statement was characterized as such by Defendants in their Memorandum of Law in Support of this Motion at p. 2.

which was the subject of the referenced settlement. Complaint para. 11; Defendants' Moving papers, Exhibit C.

Although the only Defendants actually named in the AG's Complaint are SIUH and CHAPS, Inc., and although the allegations of actual wrongdoing set forth in the complaint extend to numerous unnamed executives, **a review of the complaint reveals that only three former executives - Rick Varone, Alfred Glover and the Plaintiff, Joseph Pisani, were identified in the pleading by name.** See Defendants' Moving papers, Exhibit C.

It is apparent that the Defendants, with the blessing of the Attorney General, made a decision to impliedly point the finger at those who had departed the hospital's employ and let those people "take the weight."

While the first introductory paragraph of the Complaint was an explosive one

> "1. Staten Island University. . .defrauded New York State of millions of dollars through a sophisticated overcharging scheme, taking advantage of a Medicaid program designed to encourage medical care in underserved, usually poor, neighborhoods. . .

a thorough reading of the Attorney General's complaint reveals that the most that was actually **alleged (not proved)** with respect to Joseph Pisani is

a) Joseph Pisani was Executive Vice President of SIUH until the end of 2000 (AG's complaint para 8);

b) a report dated March 18, 1999 which stated that each of the "Levin" clinics described in the report was operating in violation of the part-time clinic regulations was forwarded to Joseph Pisani (AG's complaint paragraph 22);

c) in March 1999, an attorney memorialized a purported conversation with Pisani in which Pisani purportedly said that he would not roll back hours of a particular clinic because it was an urgi-care center and could not be operated on a part-time basis (AG's Complaint para 22);

d) that a memo dated May 15, 1999 addressed to an unnamed SIUH Vice President indicated that while efforts had been made to correct certain deficiencies, some deficiencies remained uncorrected (AG's Complaint, para 25);

e) on May 18, 1999, that memo "came to Varone **with a copy to Executive Vice President Pisani** with a cover memo from one of the SIUH Vice Presidents stating that she agreed with the recommendation to close certain clinics or reduce hours and that conclusorily, Varone and Pisani did nothing to prevent clinics from operating in excess of part-time clinic regulations. (AG's Complaint para 26)

Moreover, while the AG's Complaint alleged that Mr. Pisani left SIUH at the end of 2000, and while in fact Pisani actually left SIUH in August 2000 (Gould Affidavit Exhibit 1), many of the allegations in the AG's Complaint, including the sections entitled "Continued Violations and Misleading Representations" and "Medicaid Losses Resulting from SIUH/CHAPS Fraudulent Part-time Clinic Billing" and "Rate-Setting Fraud The CHAPS 1999 Cost Report" are

**allegations of improper practices occurring in the years following Mr. Pisani's departure from SIUH.** Defendants' Moving Papers, Exhibit C.

Prior to the publication of the AG's complaint on the Internet, Defendants had received and reviewed same it and thus had actual knowledge of the substantive allegations contained in the complaint which were intentionally referenced by Defendants in their "statement" as set forth in paragraph "10", *supra*. Complaint, para. 11.

Plaintiff alleges in the Complaint in this action, and for purposes of this motion this Court must deem such allegations to be true, that each and every allegation in the AG's complaint with respect to Plaintiff, as jointly published by Defendants and the Attorney General in the press release, and most importantly, the statement by the Hospital, were completely and provably false. Complaint, paras. 10, 11, 12, 13, and 14. [2]

On May 18, 2005, the date of the publication of the Attorney General's press release, including SIUH's statement, Richard Berman, the Chairman of the Board of the

---

[2] Thus, Defendants' bald assertions at p. 13 of their Memorandum of Law that Plaintiff does not allege that any statements about him were false" is, itself, false. Worse, their statement on the same page that Plaintiff does not dispute that certain former executives engaged in misconduct" conveniently engages in circular reasoning to miss the mark. What Plaintiff denies in the Complaint in this action at paragraphs 10-14 is, that he, as a former executive of SIUH, engaged in misconduct.

Westchester County Health Care Corporation Berman, summarily terminated Plaintiff's employment during which he earned an annual salary of $480,000. Complaint, paras 14 and 15. Gould Affidavit, Exhibit 2.

In conjunction with the termination of Plaintiff's employment and also on May 18, 2005, Berman adopted the above-referenced defamatory utterances of the Attorney General and Staten Island University Hospital and published to the news media the following "statement"

> "In light of today's disclosures by the Attorney General's office, today Westchester Medical Center terminated Joseph Pisani as Executive Vice President and Chief Administrative Officer. We have no knowledge of any issues concerning Mr. Pisani's tenure at Westchester County Medical Center. At present time, we have no reason to believe that any additional review is needed. "

Gould Affidavit, Exhibit 3.

All Defendants seek dismissal of the Complaint for failure to state a claim. As set forth hereinafter, Defendants' disingenuous arguments, and their attempts to have the court take a piecemeal approach on this Motion by parsing the Complaint and the law too finely, should be rejected.

## CONTROLLING PRINCIPLES OF LAW

The standards governing a Rule 12(b)(6) motion are well-settled. Sheppard v. Beerman, 18 F.3d 147, 150 (2nd Cir. 1994), *cert. denied*, 115 S.Ct. 73 (1994), *citing* Ad-Hoc Comm. of Baruch Black and Hispanic Alumni Ass'n v. Bernard M. Baruch College, 835 F.2d 980, 982 (2nd Cir. 1987).

The Court "must accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor." Patel v. Contemporary Classics of Beverly Hills, 259 F.3d 123, 126 (2nd Cir. 2001), *citing* Irish Lesbian & Gay Org., 143 F.3d at 644; Freedman v. Freedman, 116 F.Supp.2d 379, 380 (E.D.N.Y. 2000). The Court cannot dismiss the Complaint unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitled him to relief." Sheppard, 18. F.3d at 150 (citations omitted).

"[T]he issue is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleading alone that a recovery is very remote and unlikely but that is not the test." Schlesinger v. New York City Transit Authority, 2001 WL 62868, *1 (S.D.N.Y. 2001), *citing* Chance v. Armstrong, 143 F.3d 698,

701 (2nd Cir. 1998) "(quotation marks omitted); *see also* Cooper v. Parsky, 140 F.3d 433, 440 (2nd Cir. 1998) ('The task of the court in ruling on a Rule 12(b)(6) motion is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.') (quotation marks omitted)." Against these well-established standards and when assessing the factual allegations plead in the Complaint in the light most favorable to the Plaintiff, the Defendants motion must be denied.

**POINT I**

**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S DEFAMATION CLAIM MUST BE DENIED**

To state a claim for libel under New York law, the Plaintiff must show that the defendants wrongfully published to third persons a false and defamatory statement of and concerning and which injured the plaintiff. Levin v. McPhee, 917 F. Supp. 230 (S.D.N.Y., 1998).

**A. The hospital's statement is "of and concerning plaintiff;" at the very least, a jury could so conclude.**

Defendants argue that the Hospital's statement as set forth above, apologizing for misconduct of "former executives" is not "of or concerning" Plaintiff because he is not named in the Statement, and that therefore "the

universe of potential 'former executives' of the Hospital renders the Hospital's statement too broad for the average reader to associate it with Plaintiff." (Defendants' Memorandum of Law in Support of Motion, p. 15). They thus contend that the "group libel" doctrine bars Plaintiff's claim. In the context of the facts of this case, however, this argument is ridiculous.

First, contrary to Defendants' contentions that the absence of Plaintiff's name in the hospital's statement somehow relieves them of liability, "[t]he party alleging defamation need not be named in the publication." Chicherchia v. Cleary, 207 A.D.2d 855 (2d Dept., 1994).

> "The reference to the party alleging defamation may be indirect and may be shown by extrinsic facts. But where extrinsic facts are relied upon to prove such reference the party alleging defamation must show that it is reasonable to conclude that the publication refers to him or her and the extrinsic facts upon which that conclusion is based were known to those who heard or read the publication."

Id., at 856.

Where the Plaintiff is not named in the publication complained of, the "of and concerning" requirement is generally regarded as an issue of fact for the jury to decide. In re Hougigant, Inc. v. Hougigant, Inc., 1996 WL 527334 (S.D.N.Y., 1996). However, the court may grant a motion to dismiss a defamation claim where the challenged

statements are incapable of supporting a jury's finding that the allegedly libelous statements refer to plaintiff. Excellus Health Plan, Inc. v. Daniel T. Tran, 287 F.Supp 167 (W.D.N.Y., 2003), *citing*, Handelman v. Hustler Magazine, Inc. 469 F.Supp 1048, 1050 (S.D.N.Y. 1978). As set forth below, that is not the case here.

"In determining whether the 'of and concerning' requirement has been sufficiently plead, the court must consider whether those who know the plaintiff, upon reading the statements would understand that the plaintiff was the target of the allegedly libelous statement." See Excellus Health Plan, *supra* citing, Cardone v. Empire Blue Cross and Blue Shield, 884 F.Supp 838 (S.D.N.Y., 1995) and Dalbec v. Gentleman's Companion, Inc. 828 F.2d 921, 925 (2d Cir., 1987). But, as noted in Dalbec, supra, "[i]t is not necessary that all the world should understand the libel."

Thus, Defendants' assertions that "Plaintiff's only hope to satisfy the 'of and concerning' requirement is to rely upon the AG's complaint which was linked in PDF format to the AG's press release, " and that "[t]he Hospital did not adopt the AG's allegations and therefore the AG's words cannot be attributed to it," (Defendants' Memo, p. 15), are beside the point. For the AG's complaint and the SIUH statement, "linked" as they admittedly were, can and must

be read together to determine to whom Defendants' Statement referred.

Additionally, well-settled New York case law has distinguished "'large group' claims involving 'impersonal reproach of an indeterminate class,' which are generally not actionable, from actions by individuals belonging to a small group for defamation arising out of statements about that group." See, Brady v. Ottoway Newspapers, Inc., 84 A.D.2d 226 (2d Dept., 1982).

> In contrast to the treatment of an individual in a large group which has been defamed, an individual belonging to a small group may maintain an action for individual injury resulting from a defamatory comment about a group, by showing that he was a member of the group. Because the group is small and includes few individuals, reference to the individual plaintiff reasonably follows from, the statement and the question of reference is left for the jury.

Brady, *supra.*, at 231.

As noted by the Excellus Court, *supra.*, the Appellate Division in Brady, *supra.*, adopted "an intensity of suspicion" test to evaluate whether or not to allow the action to proceed. In such a test, "the size of the group is considered as one factor to be balanced against the other, non-exclusive reference elements such as the definiteness in number and composition of the group . . . and the degree to which the defamatory comments focus on

individual members." Excellus, *supra*, at 175, citing Brady, *supra*, at 793.

Whatever Defendants may attempt to argue regarding the breadth of the group of SIUH "former executives" alluded to in the Hospital's statement, the plain fact is that in the entire AG's complaint, **only three former executives - Rick Varone, Alfred Glover and the Plaintiff, Joseph Pisani, were identified by name.** Defendants' Moving papers, Exhibit C.

This group of three is certainly small enough to come within the intensity of suspicion test prescribed by the Appellate Division in Brady, *supra*.

Moreover, the proof of the pudding with respect to the identification of Plaintiff as one of the "former executives" referred to by Defendants in the SIUH statement is the fact that his then-employer, Westchester County Health Care Corporation, summarily fired Plaintiff on the very day of, and because of, the AG's press release which contained both the AG's Complaint and the SIUH statement. Thus, at least one entity that knew plaintiff upon reading the statements, understood that the plaintiff was the target of the allegedly libelous statement. Excellus Health Plan, *supra*.

Accordingly, at this juncture it is clear that the challenged statements are capable of supporting a jury finding that the allegedly libelous statements refer to plaintiff. Excellus Health Plan, Inc. v. Daniel T. Tran, *supra*, *citing*, Handelman v. Hustler Magazine, Inc. 469 F.Supp 1048, 1050 (S.D.N.Y., 1978).

The Court should therefore deny Defendants' Motion to Dismiss on this ground.

**B. The SIUH Statement is susceptible to a defamatory interpretation**

Defendants' next argument in favor of dismissal is that the Hospital's "Statement is also too vague and indefinite to be defamatory." This argument, too, should be rejected.

Whether a particular statement is defamatory "presents a legal question to be resolved by the court in the first instance." Aronson v. Wiersma, 65 N.Y.2d 592, 593 (1985). Further, "in assessing defamatory meaning, the words must be given a fair reading and must be construed in **the context of the entire statement as a whole tested against the understanding of the average reader.**" (emphasis supplied) Ward v. Klein, 2005 WL 2997758 (N.Y. Co., Nov 9, 2005), citing Alvarado v. K-III Magazine Corporation, 203 A.D.2d 135 (1st Dept.1994) and Aronson v. Wiersma, *supra*.

If the words are not "reasonably susceptible of a defamatory meaning, they are not actionable and cannot be made so by a strained or artificial construction". Aronson v. Wiersma, *supra* at 594. On the other hand, a court should not "strain to interpret [the alleged libelous words] in their mildest and most inoffensive sense in order to render them nondefamatory." Matherson v. Marchello, 100 A.D.2d 233, 240,(2d Dept.1984).

Applying these standards, defendants' motion to dismiss plaintiff's defamation claim on this ground must also be denied. Statements can be defamatory if they "tend to expose a person to hatred, contempt or aversion, or to induce an evil or unsavory opinion of him in the minds of a substantial number of the community". Golub v. Enquirer/Star Group, Inc., 89 N.Y.2d 1074, 1076 (1997), quoting Mencher v. Chesley, 297 N.Y. 94 (1947).

Here, the juxtaposition of the Attorney General's complaint which identifies by name only three former executives, of which the Plaintiff was one, with the hospital's statement which, as conceded by Defendants contains an "admission," that the hospital received large amounts of money to which it was not entitled (Defendants' Memorandum of Law, p. 5) and then gratuitously goes on to "admit" that its former executives engaged in misconduct is

more than enough for this Court to conclude that the statement is "reasonably susceptible of a defamatory meaning."

And again, the best evidence of the defamatory nature of the Hospital's statement is that as a result of the statement, the Westchester County Health Care Corporation terminated Plaintiff's employment.[3]

In sum, the Defendants' motion to dismiss on this ground should also be denied.

**C. The Hospital's statement is neither a privileged expression of opinion nor a privileged report of a judicial proceeding.**

In a desperate attempt to avoid the consequences of their statement, Defendants finally resort to arguments that it is merely an expression of opinion and is therefore privileged; if the Court does not accept that argument, Defendants attempt to cloak themselves with the "fair reporting" privilege provided by Section 74 of the New York Civil Rights law which, in relevant part, attaches to the "the publication of a fair and true report of any judicial

---

[3] The statement made by the Chairman of the Board of the Westchester County Health Care Corporation in terminating Plaintiff's employment stated the termination was occurring "In light of today's disclosures by the Attorney General's office." As set forth above those disclosures include not only the AG's complaint and its press release, but the statement of SIUH as well.

proceeding or other official proceeding." Defendants can't be serious.

"Whether a given statement constitutes an expression of opinion or an actionable factual assertion is a question of law for the court to decide." Clark v. Schuylerville Central School District, 2005 WL 3543791 (3d Dept., December 29, 2005), *citing,* Ferris v. Loyal Order of Moose Oneonta Lodge No. 465, 259 A.D.2d 914, 915 ( 3d Dept.,1999), appeal dismissed, 94 N.Y.2d 838 (1999). Roth v. UFT, 5 Misc.3d 888 (Kings Co., 2004).

Under either Federal or New York law, "the dispositive inquiry, is "whether a reasonable [reader] could have concluded that [the articles were] conveying facts about the plaintiff or whether what is being read or heard is likely to be opinion, not fact"." Gross v. The New York Times Company, 82 N.Y.2d 146 (1993), *citing* 600 W. 115th St. Corp. v. Von Gutfeld, 80 N.Y.2d at 139 (1992). In New York, this inquiry must be made by the court, and "entails an examination of the challenged statements with a view toward (1) whether the specific language in issue has a precise meaning which is readily understood; (2) whether the statements are capable of being proven true or false; and (3) whether either the full context of the communication in which the statement appears or the broader

social context and surrounding circumstances are such as to " 'signal * * * readers or listeners that what is being read or heard is likely to be opinion, not fact' " Gross v. New York Times, *supra.*, *citing* 600 W. 115th St. Corp. v. Von Gutfeld, supra, and Steinhilber v. Alphonse, 68 N.Y.2d 283, 290 (1986). See also, Brian v. Richardson, 87 N.Y.2d 46, 51, (1995).

In this case, as set forth above, although the AG's complaint names the Hospital and CHAPS, Inc. as the only Defendants, the Hospital's statement fobs off the wrongdoing that led to a $76,500,000 settlement as that of its "former executives" rather than the named Defendants Hospital and CHAPS, Inc. It does so by gratuitously stating that former executives, only three of whom, including Plaintiff, are named in the complaint, engaged in misconduct. Applying the standards set forth above, the use of the phrase "engaged in misconduct" is readily understood, it is capable of being proven false, and clearly, notwithstanding the Defendants' futile attempt to parse every word and sentence in its statement so as to give it any meaning but the meaning intended, in the full context of the communication in which the statement appears and the broader social context and surrounding circumstances, the Hospital's statement clearly signals

readers that what is being read is fact. In sum, the Hospital's statement constitutes actionable libel and this Court should so find.

Nor should Defendants be permitted to ride the coattails of Section 74 of the Civil Rights Law. As noted by Defendants, that section provides **in part** "A civil action cannot be maintained against any person, firm or corporation for the publication of a fair and true report of any judicial proceeding, legislative proceeding or other official proceeding, or for any heading of the report which is a fair and true head note of the statement published."

Defendants' arguments here are completely disingenuous. They provide the Court with a Law Review style treatise, including the public policy reasons for the enactment of Section 74 of the Civil Rights Law, noting that the Section's protections extend to any pleadings made "within the course of a proceeding," citing Branca v. Mayesh, 101 A.D.2d 872 (2d Dept., 1984), affd, 63 NY2d 994 (1984), and argue that "once the pendency of a judicial proceeding has been established, the privilege pursuant to Section 74 attaches to any pleading in the course of the

proceeding. Wenz v. Becker, 948 F.Supp 319, 323 (S.D.N.Y., 1996). Plaintiff does not dispute these assertions.[4]

However, the libel at issue here is the Hospital's statement as set forth above which gratuitously admits "misconduct" on the part of its former executives, when read in conjunction with the AG's complaint. In advancing their arguments regarding the applicability of the fair reporting privilege of Section 74 of the Civil Rights Law, Defendants omit any reference to the last sentence of the statute which states:

> "This section does not apply to a libel in any other matter added by any person concerned in the publication; or in the report of anything said or done at the time and place of such a proceeding which was not a part thereof."

Here what was "added" by the Defendants was their gratuitous admission that former executives (rather than the defendants named in the AG's complaint) engaged in misconduct.

In so doing, the Defendants' statement suggests more egregious conduct (on the part of former executives of which Plaintiff was one of three named) than the conduct recounted in the Complaint and presents the so-called

---

[4] Although the only copy of the Complaint provided to the Court bears neither an index number nor a signature, a search of Court records indicates that the case was assigned Index No.401646/2005 and the summons and complaint were filed on May 17, 2005.

wrongdoing on the part of its former executives (of which Plaintiff was one of three named) as established fact rather than allegation. Accordingly, the Hospital's statement is not entitled to the immunity from suit provided by Section 74 of the Civil Rights Law. See Hughes Training, Inc., Link Division v. Pegasus Real-Time Inc., 255 A.D.2d 729 (3d Dept., 1998), *citing*, Holy Spirit Ass'n for Unification of World Christianity v. New York Times Co., 49, N.Y.2d 63, Divet v. Reinisch, 169 A.D.2d 416; Branca v. Mayesh, 101 A.D. 2d 872 (2d Dept., 1984), aff'd, 63 N.Y.2d 994 (1984). Goldreyer v. Van Der Wetering 217 A.D. 2d 434 (1st Dept., 1995). If the published account, along with the rest of the article, suggests more serious conduct than that actually suggested in the official proceeding, then the privilege does not attach, as a matter of law. Ocean State Seafood v. Capital Newspaper, 112 A.D.2d 662, 666, (3d Dept., 1985).

For the reasons set forth above, the Defendants' Motion to Dismiss should in all respects be denied.

## POINT II

## THE ALLEGATIONS OF THE COMPLAINT WITH RESPECT TO THE INDIVIDUAL DEFENDANTS ARE SUFFICIENT TO WITHSTAND THIS PRE-ANSWER MOTION TO DISMISS

The individual defendants Ferreri and McDermott seek dismissal of the Complaint as to them since, they claim, Plaintiff has failed to make any allegations linking either defendant to the allegedly defamatory statement. As set forth below, the Complaint as pleaded is more than sufficient to allege a claim of defamation against Fererri and McDermott.

First, a corporation does not "speak" by itself. It can only speak through its officers, employees and authorized agents. Treppel v. Biovail, 2005 WL 2086339 (S.D.N.Y., August 30, 2005), and cases cited therein. Furthermore, under New York law, "all who take part in the procurement, composition and publication of a libel are responsible in law and equally so." Treppel v. Biovail, *supra.*, *citing*, Brown v. Mack, 185 Misc. 368, 373, 56 N.Y.S.2d 910 (N.Y.Sup.Ct.1945). Thus, while a defamation claim cannot survive without an allegation that defendants participated in the creation or the publication of the

statements at issue, Treppel v. Biovail, *supra.*, such allegations are present in the Complaint here.

For example, Paragraph 8 of the Complaint alleges

> **Each of the Defendants authorized, participated in and/or approved both the settlement and the circumstance that the press release and related documents (including the below-referenced complaint and SIUH statement regarding same) were going to be published to the world on the Internet.**

**(Emphasis supplied).** The Complaint further alleged

> In connection with that settlement it was jointly reported on the website that SIUH agreed to reimburse the State for "fraudulently billed services" in excess of $76,500,000 . A copy of the press release and its accompanying documents as published on the Internet are annexed to this complaint.

Complaint, para. 9.

Further, Paragraph 10 of the Complaint alleges

" As part of the said press release a "Statement" **was prepared and approved for publication on that website by the Defendants** which provided in pertinent respect:

> "It causes SIUH's Trustees and current Executives much pain to come before our community in these circumstances. We deeply regret and are embarrassed by the misconduct carried out by former executives of the Hospital that led to this settlement. . . We humbly pledge to work conscientiously to keep SIUH from ever again bringing such dishonor to the hospital".

The Complaint further alleges that "Defendants' statement was calculatedly false and purposefully intended to attribute criminal wrong doing to Plaintiff in order to

deflect attention from SIUH and widely disseminate the false impression that then incumbent officials and/or officers of SIUH had not been involved in the Medicaid fraud referenced in the press release. In fact certain of those incumbents were, and Defendants knew they were, directly and personally involved in the commission and/or condonation and/or encouragement of fraudulent Medicaid practices by SIUH and its staff." Complaint para. 10.

Finally, the Complaint alleges that " Each and every allegation with respect to Plaintiff, as jointly published by Defendants and the Attorney General in the press release, the statement, and the complaint as disseminated on the website by them was completely and provably false." Complaint, para. 12.

In sum, assuming, as the Court must on this motion, that the allegations of the Complaint are true, the Complaint more than amply pleads a defamation claim against the individual defendants. cf, Kjar v. Jordan, 217 A.D.2d 981, 981, (4th Dept., 1995) and Kraus v. Brandstetter, 202 A.D.2d 396, 397, (2d Dept., 1994).

Accordingly, the individual defendants' motion to dismiss the claim against them should in all respects be denied.

## CONCLUSION

**DEFENDANTS' PRE-ANSWER MOTION TO DISMISS SHOULD IN ALL RESPECTS BE DENIED.**

Dated: White Plains, N.Y.
January 31, 2006

LOVETT & GOULD, ESQS.
By: Jane Bilus Gould (JBG4510) (JBG4510)
Jane Bilus Gould (JBG4510)
Attorneys for Plaintiff
222 Bloomingdale Road
White Plains, NY 10605
Telephone: (914) 428-8401