UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————

N⁰ 06-CV-1016 (JFB)(MLO)

———————

JOSEPH A. PISANI,

Plaintiff,

VERSUS

STATEN ISLAND UNIVERSITY HOSPITAL,
ANTHONY C. FERRERI, AND PATRICK F. MCDERMOTT,

Defendants.

———————

MEMORANDUM AND ORDER
May 31, 2006

———————

JOSEPH F. BIANCO, District Judge:

Plaintiff, Joseph A. Pisani, brings this action for defamation and defamation *per se* against Staten Island University Hospital, and Anthony C. Ferreri and Patrick F. McDermott in their individual and official capacities (collectively, "defendants"). Presently before the Court is defendants' motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons stated below, the motion is denied.

I. BACKGROUND

A. The Underlying Facts

The following facts are taken from the complaint and assumed to be true for purposes of this motion.

On May 18, 2005, New York State Attorney General Elliot Spitzer and defendants jointly issued a press release, published on the Attorney General's Internet website, regarding the settlement of a Medicaid fraud complaint between the State of New York and Staten Island University Hospital (hereinafter "Hospital" or "SIUH"). (Compl. ¶ 7.) In connection with the settlement, it was reported on the website that SIUH agreed to reimburse the State for "fraudulently billed services" in excess of $76.5 million. (*Id.* ¶ 9.) The following statement (hereinafter "Hospital statement") from SIUH appeared on the website within the Attorney General's press release:

Today the New York State Attorney General's Office announced a settlement recovering unlawful

Medicaid reimbursements to Staten Island University Hospital (SIUH). The settlement is based on actual damages conservatively estimated by the Attorney General's Office . . . with significant weight given to the hospital's financial inability to pay more than what has been agreed to . . . . It causes SIUH's Trustees and current Executives much pain to come before our community under these circumstances. We deeply regret and are embarrassed by the misconduct carried out by former executives of the Hospital that led to this settlement. . . We humbly pledge to work conscientiously to keep SIUH from ever again bringing such dishonor to the hospital.

(*Id.* ¶ 10, Ex. A.) The press release also contained a hyperlink to the SIUH civil complaint (hereinafter, "SIUH complaint") and the settlement agreement. (*Id.* ¶ 11.) Plaintiff was not named as a defendant in that case. The only named defendants in the SIUH complaint are SIUH and CHAPS Community Health Services, Inc. However, in addition to generally alleging a substantial fraud scheme at SIUH, the SIUH complaint alleged conduct by certain SIUH executives in connection with that scheme, including plaintiff:

1. Staten Island University . . . defrauded New York State of millions of dollars through a sophisticated overcharging scheme, taking advantage of a Medicaid program designed to encourage medical care in underserved, usually poor neighborhoods . . . .

2. From 1989 to July 2000, the President and Chief Executive Officer of SIUH was Americo 'Rick' Varone. Joseph Pisani was Executive Vice President of SIUH until the end of 2000 . . . . Numerous other SIUH officers and employees also had knowledge of the violations described in this [c]omplaint.

\* \* \* \*

22. A report dated March 18, 1999, which was forwarded to CEO Varone and Executive Vice President Pisani, stated that each of the Levit clinics described . . . was operating in violation of . . . regulations.

23. At the same time . . . a lawyer wrote a memorandum to file to memorialize a conversation with Joseph Pisani, the Executive Vice President of SIUH. The lawyer reported learning that a clinic was operating on a full-time basis and calling Pisani to tell him he had to "roll back the hours" of the clinic. The memorandum stated that, if he did not, "he jeopardizes all Medicaid billing of the [clinic]." Pisani's response was recorded: "He told me that he would not do so because he could not operate an UrgiCenter on a part-time basis even though that's what it legally is." The clinic continued to operate – and bill Medicaid – in violation of the regulations.

\* \* \* \*

25. . . . A May 15, 1999 memo to a SIUH Vice President from a SIUH administrator who inspected the clinics updated reports on Dr. Levit's clinics, noting . . . violations of the hours of operation regulations . . . .

2

26. That memo came to CEO Varone on May 18, 1999, with a copy to Executive Vice President Pisani . . . . Despite acknowledging this warning, and purporting to approve changes to the operations of the clinics, Varone and Pisani in fact did nothing to prevent the clinics from operating in excess of the part-time clinic regulations.

\* \* \* \*

44. The acts and practices alleged herin constitute conduct proscribed by § 63(12) of the Executive Law, in that defendants engaged in repeated fraudulent or illegal acts or otherwise demonstrated persistent fraud or illegality in the carrying on, conducting or transaction of business.

(*Id.* ¶ 11.) According to plaintiff, the allegations in the SIUH complaint are false. (*Id.* ¶ 12.) Plaintiff alleges that he never engaged in Medicaid fraud, fraudulent Medicaid practices and/or any of the other improper or illegal conduct as alleged in the press release statement. (*Id.* ¶ 13.) Plaintiff alleges that, as a result of the false statement by defendants, plaintiff was terminated from his employment at Westchester County Health Care Corporation and suffered an annual loss of salary in the amount of $480,000 plus benefits.[1] (*Id.* ¶ 14.)

B. Procedural History

Plaintiff filed his original complaint on September 22, 2005, in the United States District Court for the Southern District of New York alleging claims of defamation and defamation *per se*. On January 19, 2006, defendants filed this motion to dismiss and/or transfer venue. The action was transferred pursuant to 28 U.S.C. §1404(a), by Order dated February 27, 2006, based upon the parties' consent to a change in venue. Oral argument was held on the motion to dismiss on May 12, 2006.

II. DISCUSSION

A. The Standard of Review

In reviewing a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted, the court must accept the factual allegations set forth in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *See Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). Dismissal is warranted only if it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Weixel v. Bd. of Educ. of the City of N.Y.*, 287 F.3d 138, 145 (2d Cir. 2002) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). The appropriate inquiry is "not whether a plaintiff will ultimately prevail, but

---

[1] In addition to the present action, plaintiff filed an action against his former employer, Westchester County Health Care Corporation (WCHCC), as well as Richard Berman and Kara Bennorth, for a claim under § 1983 and state law claims of defamation and breach of contract. Like the defamation claim in this case, the defamation claim in that case arose out of the same SIUH complaint and settlement and plaintiff's subsequent termination from WCHCC. However, the alleged defamatory statement in that case was an entirely separate statement by WCHCC that was issued in conjunction with plaintiff's termination from WCHCC. That claim was dismissed by Opinion and Order dated March 3, 2006. *See Pisani v. Westchester County Health Care Corp.*, 05 Civ. 7113 (WCC), 2006 U.S. Dist. LEXIS 15608 (S.D.N.Y. March 31, 2006).

3

whether the claimant is entitled to offer evidence to support the claims." *Twombly v. Bell Atlantic Corp.,* 425 F.3d 99, 106 (2d Cir. 2005).

For purposes of a motion to dismiss, the Court is limited to the contents of the complaint and "the facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference." *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991).

B. Elements of Defamation and Defamation *Per Se*

An action for defamation that is expressed in writing or print is the common law cause of action of libel. *See Church of Scientology Int'l v. Behar*, 238 F.3d 168, 173 (2d Cir. 2001). In order to state a cause of action for libel under New York law, a plaintiff must plead: (1) a false and defamatory statement of fact concerning the plaintiff; (2) that was published by the defendant to a third party; (3) due to the defendant's negligence (or actual malice, depending on the status of the person libeled); and (4) special damages or *per se* actionability.[2] *Celle v. Filipino Reporter Enters.*, 209 F.3d 163, 176 (2d Cir. 2000).

Defendants argue that plaintiff's defamation and defamation *per se* claims must be dismissed because plaintiff failed to allege:

(1) that any statements concerning him were false; and (2) that the allegedly defamatory statement was "of and concerning" the plaintiff. With respect to the "of and concerning" requirement, defendants specifically argue that the allegedly defamatory statement is barred under the group libel doctrine and not actionable because there is no allegation that defendants, rather than the Attorney General, made the defamatory statement.

As set forth below, the Court finds these arguments unpersuasive. Plaintiff has alleged facts that, if true, would permit a reasonable jury to find the elements of defamation under New York law with respect to the May 18, 2005 Hospital statement.

1. False Statements

As to the first element, defendants argue that the plaintiff does not allege that any statements about him were false. More specifically, as to the Hospital statement contained in the press release, defendants assert that the only possible defamatory reference to any person is the reference to "misconduct carried out by former executives," and, according to defendants, plaintiff does not dispute in his complaint that former executives engaged in misconduct. (Defs.' Mem. at 13.) Moreover, with respect to the statements contained in the SIUH complaint, defendants argue that plaintiff did not deny the truth of any of the specific allegations. (*Id.* at 14.)

Contrary to defendants' assertion, the complaint clearly states that "the press release, the statement, and the complaint as disseminated on the website by them was completely and provably false." (Compl. ¶ 12.) Therefore, taking plaintiff's complaint

---

[2] As stated *infra*, plaintiff alleges defamation and defamation *per se*. The elements of the two claims are identical except that a claim of defamation *per se* does not require proof of special damages. *See Friends of Falun Gong v. Pacific Cultural Enter., Inc.*, 288 F. Supp. 2d 273, 284 n.4 (E.D.N.Y. 2003) ("The only requirement the plaintiffs need not fulfill in a defamation *per se* claim is proof of special damages.").

4

as true for purposes of the motion to dismiss, plaintiff satisfies the first element.

2. "Of and Concerning" Plaintiff

Next, defendants argue that the allegedly defamatory statement in the press release was not "of and concerning" the plaintiff. "Although the 'of and concerning' requirement is generally an issue of fact, which the jury alone may decide, the Court properly may dismiss an action pursuant to Rule 12(b)(6) where the statements 'are incapable of supporting a jury's finding that the allegedly libelous statements refer to plaintiff.' Whether the complaint alleges facts sufficient to demonstrate a reasonable connection between the plaintiff and the alleged libel is thus a question for the Court." *Church of Scientology Int'l v. Time Warner*, 806 F. Supp. 1157, 1160 (S.D.N.Y. 1992) (quoting *Handelman v. Hustler Magazine, Inc.*, 469 F. Supp. 1048, 1050 (S.D.N.Y. 1978)). "In determining whether the 'of and concerning' requirement has been sufficiently pleaded, the Court must consider whether those who know the plaintiff, upon reading the statements, would understand that the plaintiff was the target of the allegedly libelous statement." *Church of Scientology Int'l,* 806 F. Supp. at 1160; *see also Algarin v. Town of Wallkill*, 421 F.3d 137, 139 (2d Cir. 2005) (dismissing complaint where it failed to "set forth circumstances from which to infer the identity of any particular officers who might be understood to have been the subject of any defamatory allegations in the report"); *Dalbec v. Gentleman's Companion, Inc.*, 828 F.2d 921, 925 (2d Cir. 1987) ("The test is whether the libel designates the plaintiff in such a way as to let those who knew [the plaintiff] understand that she was the person meant. It is not necessary that all the world should understand the libel.") (internal quotations omitted).

Here, defendants argue that the Hospital statement did not name the plaintiff and the average reader would not understand the statement as referring to plaintiff. Specifically, defendants claim that the group libel doctrine bars the defamation claim because the plaintiff failed to demonstrate the statement was "of and concerning" the plaintiff. (Defs.' Mem. at 15.)

Given the facts alleged in the complaint, and drawing all reasonable inferences in plaintiff's favor for purposes of this motion to dismiss, the Court concludes that the allegedly defamatory statement is capable of supporting a jury's finding that such statement refers to plaintiff. *See Excellus Health Plan, Inc. v. Tran*, 287 F. Supp. 2d 167, 174 (W.D.N.Y. 2003) ("[T]he court may grant a motion to dismiss a defamation claim where the challenged statements 'are incapable of supporting a jury's finding that the allegedly libelous statements refer to plaintiff.'") (quoting *Handelman*, 469 F. Supp. at 1050). Although the allegedly defamatory statement referred to "former executives of the hospital," the press release contained a link to the SIUH complaint and the SIUH settlement agreement.[3] Only three former executives

---

[3] Though the press release and accompanying documents were not attached to plaintiff's complaint, plaintiff states in his complaint that "[a] copy of the press release and its accompanying documents as published on the Interenet are annexed to [the] complaint." (Compl. ¶ 9.) Defendants, however, annex copies of the documents to their motion to dismiss as Exhibits B, C, and D. "When a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint, the court may nevertheless take the document into consideration in deciding the defendant's motion to dismiss, without converting the proceeding to one for summary judgment." *Holowecki v. Fed.*

5

were identified by name in the SIUH complaint, one of whom was plaintiff, and they were named in paragraphs in connection with the alleged wrongdoing. Furthermore, plaintiff was terminated on the same date the press release was published, May 18, 2005.[4] (Compl. ¶ 14.) Given these alleged circumstances surrounding the defamatory statement, a reasonable jury could conclude that the Hospital statement refers to plaintiff.

Defendants rely in part on *Cardone v. Empire Blue Cross & Blue Shield*, 884 F. Supp. 838 (S.D.N.Y. 1995), to support their position that the press release regarding the lawsuit is not "of and concerning" the plaintiff. The facts in *Cardone*, however, are easily distinguishable from the present case.[5] In *Cardone*, a claim for defamation was alleged by a company's former CEO, Albert Cardone. In particular, the lawsuit involved a company news release that stated "that the Company's internal auditors . . . uncovered a discrepancy," and that a law firm was hired to investigate. *Id.* at 842. A New York Times article ran the following day that stated the company "acknowledged . . . that [it] repeatedly sent erroneous data to New York State insurance regulators." *Id.* Neither the news release nor the New York Times article mentioned Cardone. However, the article did have a quote that regulators wanted to question Jerry Weissman, the company's then CFO. *Id.* The paper ran a second article the next day that said "unnamed [company] officials stated they 'misled state legislators.'" *Id.* Another company news release was issued that day in which it was announced that there would be an internal investigation by the Audit Committee of the Board. *Id.* The plaintiff in *Cardone* attempted to argue that, because he was the CEO and Chairman, people who knew him would understand him to be the target of the statement since, as a result of his CEO position, he had ultimate responsibility. *Id* at 847. However, the court held on summary judgment that, because Cardone's name was never mentioned in any of the company press releases and because the absence of his name was "conspicuous [given that] the press releases [did] mention [the company's] former CFO by name," no reasonable person could conclude that the statements in the articles and press releases referred to plaintiff. *Id.* The court in *Cardone* further noted that defendant's "statements to the media expressly stated that it would not speculate on the extent of any individual's involvement in the alleged misconduct." *Id.*

In contrast to *Cardone*, the Hospital statement in the instant case is contained in a press release discussing the complaint and settlement, and the statement refers not just to unnamed officials, but rather, to "former

---

*Express Corp.*, 440 F.3d 558, 565-66 (2d Cir. 2006) (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (internal quotation marks omitted)). Therefore, it is proper for the Court to consider these documents in deciding this motion.

[4] *See* Aff. of Jane Bilus Gould in support of Pl. Opp., Ex. 2, Termination Letter. Though the complaint does not state the exact date of plaintiff's termination, the actual termination letter is dated May 18, 2005. Although the letter was not annexed to the complaint, the Court deems the letter incorporated by reference given plaintiff's statement in his complaint that "he was immediately terminated from his position of employment at the Westchester County Health Care Corporation." (Compl. ¶ 14.) For purposes of this motion, however, the Court does not rely on plaintiff's other annexed documents.

[5] As an initial matter, *Cardone* was a motion for summary judgment while this Court is addressing a motion to dismiss and, thus, bound by the facts as alleged in the complaint to determine whether a claim has been stated.

executives." Further, despite defendants' contention that "[t]he universe of potential 'former executives' of the Hospital renders the Hospital's Statement too broad for the average reader to associate it with [the] Plaintiff," the website on which the press release appears contains a hyperlink to the actual complaint that specifically names only three former executives, one of whom is the plaintiff. Unlike in *Cardone,* where the plaintiff merely argued an assumption based on his former position, there is more specific information from which a reasonable jury could conclude that a reader would view the statements as referring to plaintiff. *See Karedes v. Ackerley Group, Inc.*, 423 F.3d 107, 114 (2d Cir. 2005) ("Challenged statements are not to be read in isolation but must be perused as the average reader would against the whole apparent scope and intent of the writing.") (quoting *Celle v. Filipino Reporter Enters.*, 209 F.3d 163, 177 (2d Cir. 2000) (internal citations and quotation marks omitted)).

Defendants also argue that the group libel doctrine bars the claim. (Defs.' Mem. at 15.) "Under the group libel doctrine, a plaintiff's claim is insufficient if the allegedly defamatory statement referenced the plaintiff solely as a member of a group." *Church of Scientology Int'l*, 806 F. Supp. at 1160. This means that "'the circumstances of the publication [must] reasonably give rise to the conclusion that there is a particular reference to the member'" for a claim to be actionable by that member. *Id.* (quoting Restatement (Second) of Torts, § 564A(b)). Defendants argue that the plaintiff was referred to here only as a member of a group and that plaintiff is not identified more than "any other former Hospital employee." (Defs.' Mem. at 17; Defs.' Reply at 3.) Defendants seem to distinguish this argument from their argument that the statement was not "of and concerning" plaintiff. The group libel doctrine, however, is generally used in support of the position that the "of and concerning" element is not satisfied. In any event, as noted above, the Court finds that plaintiff has adequately pled the "of and concerning" requirement and the group libel doctrine does not undermine the plaintiff's position that a reasonable jury could conclude that the alleged libelous statement refers to the plaintiff, as opposed to former executives generally.

Defendants also cite *Lines v. Cablevision Sys. Corp.*, No. 04 CV 2517 (DRH) (ETB), 2005 WL 2305010 (E.D.N.Y. Sept. 21, 2005) in support of their position. However, like *Cardone*, the *Lines* case is distinguishable from the allegations in the instant case. In *Lines,* the defendant issued a press release stating that fourteen of its employees were terminated in connection with the review of an internal investigation of expense accruals. Although the plaintiff in *Lines* was terminated the same day the press release was disseminated, the release only mentioned the president of one division specifically, and mentioned no one else by name. *Id.* at *1. Thereafter, news media began printing articles about the ongoing investigation and several articles identified Lines as an individual terminated as a result of the investigation. *Id.* As a result, Lines was unsuccessful in finding other employment and sued his former employer for the damage to his reputation. *Id.* at *2. The court held that Lines was unable to overcome the group libel doctrine because "[p]laintiff [could not] demonstrate that [defendant's] citation to '14 AMC employees' reasonably gives rise to the conclusion that it particularly referenced [p]laintiff." *Id.* at *5. In *Lines*, subsequent news articles mentioned that the plaintiff was terminated. However, the press release itself that was at issue did not mention the plaintiff by name, and it was not

7

linked to any other documents from which one could reasonably conclude that the statement referred to the plaintiff in particular. The complaint in this case, however, alleges that the Hospital statement was directly linked to other documents naming the plaintiff. The plaintiff here is not relying on subsequent news articles for the position that the statement was "of and concerning" him; rather, he is relying on the statement itself, which includes attached documents. Given the full content of the release, a reasonable jury could conclude that the plaintiff is referenced as a particular member of the group of "former executives."

Finally, defendants assert that the Hospital did not adopt the Attorney General's allegations and, therefore, the Attorney General's words cannot be attributed to it and cannot be linked for purposes of the "of and concerning" requirement. (Defs.' Mem. at 15.) Plaintiff is not attempting to attribute the Attorney General's statements to defendants, nor are the statements in the SIUH complaint the defamatory statements at issue in this action, despite the fact that plaintiff maintains they are false. Rather, plaintiff alleges that defendants published their own defamatory statement knowing that it would be linked to the complaint and that the context, and total content of the publication, could reasonably be read as "of and concerning" plaintiff.

Accordingly, the Court concludes that plaintiff has alleged facts that, if true, could permit a reasonable jury to find the elements of defamation, including the "of and concerning" element under New York law, with respect to the Hospital statement. *See Karedes v. Ackerley Group, Inc.*, 423 F.3d 107, 113 (2d Cir. 2005).

B. Absolute Privilege of Opinion Statements

Defendants also argue that the Hospital's statement is an absolutely privileged statement of opinion. (Defs.' Mem. at 17.) "In all defamation cases, the threshold issue which must be determined, as a matter of law, is whether the complained of statements constitute fact or opinion. If they fall within the ambit of 'pure opinion', then even if false and libelous, and no matter how perjorative or pernicious they may be, such statements are safeguarded and may not serve as the basis for an action in defamation." *Parks v. Steinbrenner*, 131 A.D.2d 60, 62 (N.Y. App. Div. 1987). Pure opinion "is defined as being accompanied by a recitation of the facts upon which it is based." *Ferris v. Loyal Order of Moose Oneonta Lodge 465*, 259 A.D.2d 914, 915 (N.Y. App. Div. 1999). To determine whether a statement is one of opinion or fact, New York courts engage in a three-part analysis, evaluating:

> (1) whether the specific language in issue has a precise meaning which is readily understood; (2) whether the statements are capable of being proven true or false; and (3) whether either the full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such as to signal . . . readers or listeners that what is being read or heard is likely to be opinion, not fact.

*Gross v. New York Times Co.*, 82 N.Y.2d 146, 153 (N.Y. 1993) (internal quotations omitted). Contrary to defendants' assertion, given the above factors, the Court cannot find as a matter of law that the statement, "[w]e deeply regret and are embarrassed by the misconduct carried out by former executives of the Hospital that led to this settlement," is a statement of opinion. Rather, a reasonable

8

jury could conclude that a reasonable reader would view the statement as having a precise meaning and as conveying a "fact," capable of being proven true or false based upon an examination of the context in which it was uttered. *See id.* at 155 (finding statements factual because given their "context they convey 'facts' that are capable of being proven true or false"). For example, independent of what was alleged in the SIUH complaint, a reasonable jury could find that the Hospital statement implies that the Hospital is aware of undisclosed facts that confirm misconduct on the part of former executives, in fact, did occur. *See Long v. Marubeni Am. Corp.*, 406 F. Supp. 2d 285, 296 (S.D.N.Y. 2005) ("'The essential task is to decide whether the words complained of, considered in the context of the entire communication and of the circumstances in which they were spoken or written, may be reasonably understood as implying the assertion of undisclosed facts justifying the opinion.'") (quoting *Steinhilber v. Alphonse*, 68 N.Y.2d 283, 290 (N.Y. 1986)). Thus, it cannot be said that the statement is, as a matter of law, one of opinion. Accordingly, a dismissal on such grounds is unwarranted.

C. Judicial Proceeding Privilege

Defendants also contend that the statement is protected by Section 74 of the New York Civil Rights Law. The statute provides: "a civil action cannot be maintained against any person, firm, or corporation, for the publication of a fair and true report of any judicial proceeding." N.Y. CIV. RIGHTS LAW § 74. The section is intended to "immunize[] fair and true reports of public proceedings." *Karp v. Hill & Knowlton, Inc.*, 631 F. Supp. 360, 363 (S.D.N.Y. 1986). However, "[o]ut-of-court statements such as press releases, which are not covered by the litigants' privilege, are privileged only to the extent that they represent fair and true reports of what occurred in the proceeding (subject to the *Williams* exception.)." *Long v. Marubeni Am. Corp.*, 406 F. Supp. 2d 285, 294 (S.D.N.Y. 2005). "'A report cannot be said to be substantially accurate, however, if it would have a different effect on the mind of the recipient than the actual truth. In other words, Section 74 does not afford protection if the specific statements at issue, considered in their context, suggest[] more serious conduct than that actually suggested in the official proceeding.'" *Karedes v. Ackerley Group, Inc.*, 423 F.3d 107, 119 (2d Cir. 2005) (quoting *Calvin Klein Trademark Trust v. Wachner*, 129 F. Supp. 2d 248, 253 (S.D.N.Y. 2001) (internal quotations omitted)); *see also Computer Aid, Inc. v. Hewlett-Packard Co.*, 56 F. Supp. 2d 526, 533 (E.D. Pa. 1999) (applying New York law and finding "[a] statement is not a 'fair and true' report of a judicial proceeding under Section 74 if it creates false impression as to nature and severity of the claims against the plaintiff").

Plaintiff's complaint alleges that the statement by the Hospital was not a fair and true report of the complaint. More specifically, plaintiff asserts that "[d]efendants' statement was calculatedly false and purposefully intended to attribute criminal wrongdoing to [p]laintiff in order to deflect attention from SIUH and widely disseminate the false impression that then incumbent officials and/or officers of SIUH had not been involved in the Medicaid fraud referenced in the press release." (Compl. ¶ 10.) One could argue that the section of the NYSAG press release that is clearly delineated as the Hospital statement does not report on, or quote, the complaint, but rather acknowledges the settlement and apologizes by assigning blame to "former executives." In addition, the settlement agreement itself states "SIUH neither admits nor denies the conduct set forth in the Complaint." Plaintiff asserts that the Hospital statement implicitly *admits* misconduct by former executives and, therefore, defendants' endorsement of the

State's allegations could suggest that defendants had independent reason to believe in their truth, despite the fact that the complaint contained mere allegations. *See, e.g., Divet v. Reinisch*, 169 A.D.2d 416, 417 (N.Y. App. Div. 1991) (finding a statement absolutely privileged under Section 74 where the party did *not* allege that the defaming party "presented what amounts to a pleading as an allegation of fact").

Taking all the allegations of the complaint as true and drawing all reasonable inferences in plaintiff's favor, the motion to dismiss the complaint based upon the judicial proceeding privilege must fail. There are reasonable inferences that can be drawn from the Hospital statement, in the context of the entire press release, from which a reasonable jury could find that such statement had a different effect on the reader than the documents filed as part of the litigation by the New York State Attorney General. First, a reasonable jury could find that the Hospital statement may not be interpreted as a fair and accurate report of the proceedings because the SIUH complaint only contains allegations, the settlement explicitly denies admission of those allegations, and yet the Hospital statement admits the misconduct of former executives. *See Computeraid, Inc.*, 56 F. Supp. 2d at 533 ("The statement is also not a 'fair and true' report where a reading of the published statement would have a different effect on the reader than reading the Complaint."); *see also Wenz v. Becker,* 948 F. Supp. 319, 324 (S.D.N.Y. 1996) (denying summary judgment where there were issues of material fact as to whether the allegedly defamatory statement was a fair and true report of the proceeding). Second, a reasonable jury could find that the statement – "[t]he settlement is based on actual damages conservatively estimated . . . and with significant weight given to the hospital's financial inability to pay more than what it has agreed to" – suggests there was more serious conduct than that actually suggested in the official proceeding. In other words, the use of the term "conservatively estimated" by the defendant could be read as implying that the actual fraud by the former executives, including plaintiff, was much greater than what was contained in the SIUH complaint and settlement agreement. Therefore, because the Court finds that a reasonable jury could decide that the Hospital statement was not a fair and true report, the Court cannot conclude that, as a matter of law, the Hospital statement is protected by the judicial proceeding privilege.

At oral argument, counsel for defendants argued that *Proctor and Gamble v. Quality King Distributors, Inc.*, 974 F. Supp. 190 (E.D.N.Y. 1997), strongly supports their position that the judicial proceeding privilege applies. The Court disagrees. In *Proctor and Gamble*, the court found that the privilege applied to a letter and a press release sent by Proctor and Gamble ("P&G") regarding a suit they filed against Quality King. The press release stated that P&G filed a suit against Quality King charging the company with selling counterfeit goods and trademark and package design infringement. *Id.* at 196. The letter was sent by P&G to retailers and included a statement: "[P&G] has already filed suit against one known distributor of this production, Quality King . . . ." *Id.* The court found the statements to be "fair and true" reports of the judicial proceedings. *Id.* at 197. That case, however, is easily distinguishable from the present case. P&G's statements amounted to statements by a plaintiff, P&G, reporting that an action was commenced against another company, Quality King Distributors. In the instant case, the alleged defamatory statement concerned someone who was not a party to the prior action and, as noted above, could be found to have gone beyond merely reporting that an action was commenced or completed.

10

In short, based upon the allegations in the complaint, a reasonable jury could find that Section 74 does not apply because (1) the Hospital statement transformed *allegations* as to plaintiff in the SIUH complaint into *fact*, or (2) the Hospital statement suggested more serious conduct than that which was alleged in the SIUH complaint. Accordingly, a motion to dismiss based upon Section 74 is unwarranted.

D. Liability of Individual Defendants

Defendants assert that the case should be dismissed as to the individual defendants, Ferreri and McDermott, for lack of specific allegations against the individuals. Defendants argue that the only specific allegation against the individuals is that they worked at the Hospital. (Defs.' Reply at 9.) "[U]nder New York law, 'all who take part in the procurement, composition and publication of a libel are responsible in law and equally so.'" *Treppel v. Biovail Corp.*, 03 Civ. 3002 (PKL), 2005 U.S. Dist. LEXIS 18511, at *11 (S.D.N.Y. Aug. 30, 2005) (quoting *Brown v. Mack*, 56 N.Y.S.2d 910 (N.Y. Sup. Ct. 1945) (citation omitted)). In *Treppel*, the court dismissed the claims against individual defendants where plaintiff failed to allege that the individuals were "involved in the creation or the publication of the statements at issue." *Treppel,* 2005 U.S. Dist. LEXIS 1851, at *12. Here, however, plaintiff alleges that "[e]ach of the [d]efendants authorized, participated in and/or approved both the settlement and the circumstance that the press release and related documents (including the below-referenced complaint and SIUH statement regarding same) were going to be published to the world on the Internet." (Compl. ¶ 8.) Plaintiff further alleges that the statement was "prepared and approved for publication on that website by the [d]efendants." (Compl. ¶ 10.) Taking the allegations in the complaint as true, the Court finds that the plaintiff has adequately pled that the individuals Ferreri and McDermott participated in the creation and/or publication of the Hospital statement containing the alleged defamatory statement. Therefore, there is not basis to dismiss the individual defendants.

V. CONCLUSION

Defendants' motion to dismiss the complaint is denied.

SO ORDERED.

_____

JOSEPH F. BIANCO
United States District Judge

Dated: May 31, 2006
Brooklyn, NY

\* \* \*

The attorneys for the plaintiff are Jane Bilus Gould, Esq. and Jonathan Lovett, Esq. of Lovett & Gould at 222 Bloomingdale Road, White Plains, New York, 10605. The attorneys for defendants are David O. Simon, Esq. and Tracey A. Cullen, Esq. of Epstein Becker and Green, P.C. at 250 Park Avenue, New York, New York 10177.